IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY COONS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YUM! BRANDS, INC.,<br><br>Defendant. | Case No.<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Kimberly Coons ("Coons" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Yum! Brands, Inc. ("Yum! Brands" or the "Defendant") to put a stop to its unlawful collection, use, and storage of Plaintiff's and putative Class members' sensitive biometric identifiers and biometric information, to have Defendant return or destroy the biometric information, including fingerprints, that it has retained for over three years and for which the initial use is no longer pertinent, and to issue a written retention policy, among other things. Plaintiff further seeks statutory damages. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, based upon counsel's diligent investigation, publicly available documents and the conduct and statements of Defendant.

**NATURE OF THE ACTION**

1. Defendant Yum! Brands is a North Carolina corporation that operates restaurant brands including Taco Bell, KFC and Pizza Hut.

2. When employees first begin their jobs at Taco Bell, instead of using key fobs or other identification cards they are required to scan their fingerprint in its biometric time tracking

1

system as a means of authentication. They are required to scan their fingerprints to clock in and out, for breaks and in some cases to log into the computer system in order to, for example, deal with employee meals and customer orders.

3.  While there may be certain benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee.

4.  This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

5.  Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

6.  Despite this law, Defendant disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Defendant has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

7.  Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct

violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; (iii) awarding liquidated damages to Plaintiff and the proposed Class; and (iv) awarding Plaintiff statutory damages for such violations.

## PARTIES

8. Plaintiff Kimberly Coons is a natural person and citizen of the State of Illinois who worked at Taco Bell in Illinois.

9. Defendant Yum! Brands, Inc. is a North Carolina corporation with its principal place of business in Louisville, Kentucky. Defendant is thus a citizen of the states of North Carolina and Kentucky. Defendant operates the restaurant brands KFC, Pizza Hut, Taco Bell, The Habit Burger Grill, and WingStreet in Illinois and in this District. Defendant operates these brands throughout Illinois, either as company owned stores, and through large franchisees and operates its businesses throughout Illinois.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties in this action, the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and there are 100 or more members of the Class. Because it is estimated that the Class will have at least hundreds, if not thousands, of members and Defendant's intentional and reckless violations of BIPA are punishable by statutory damages of $5,000 per violation, the amount in controversy is well in excess of $5,000,000.

11. This Court has personal jurisdiction over Defendant because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Defendant collected data directly in Illinois from Plaintiff and Illinois-based employees and exposed residents of Illinois to ongoing privacy risks within Illinois based on the collection, capture, obtainment,

3

disclosure, redisclosure and dissemination of their biometric identifiers and information.

12. Defendant's deliberate gathering of Illinois users' personally identifiable information is intentionally targeted toward Illinois residents, including Plaintiff and the Class, and constitutes purposeful activity directed at devices and individuals in Illinois.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in Illinois. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendant.

## FACTUAL BACKGROUND

### I. The Biometric Information Privacy Act.

14. The BIPA seeks to safeguard individuals' biometric identifiers and information.

15. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

16. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—unique biometric identifiers that can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-

bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

17. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

18. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information.740 ILCS 14/15(b) (emphasis added).

19. BIPA specifically applies to employees who work in the State of Illinois. The BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

20. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10.

21. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

22. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently

5

destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

**II.     Yum! Brands Violates the Biometric Information Privacy Act.**

23.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

24.     Unfortunately, Defendant specifically continues to collect, store, and use its employees' biometric data in violation of the BIPA.

25.     Specifically, when employees first begin work at one of Defendant's stores, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

26.     Defendant uses an employee time tracking system, in some places the Aloha system, that requires employees to use their fingerprints as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work, or in the case of managers, for instance, to get into Defendant's computer system for other purposes, such as keeping track of employee meals, and customer orders

27.     Defendant failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all, and failed to obtain their knowing consent to use their biometric data

28.     Defendant similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no

longer relevant, as required by the BIPA.  An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Defendant's databases -- or if they will ever be.

29. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Defendant —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Defendant disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

30. Ultimately, Defendant disregards its employees' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF

31. Plaintiff worked for Defendant at various of its Taco Bell restaurants for about 18 years in about six to seven different locations.  The last store in which Plaintiff worked was located in Caseyville, Illinois.  She was employed until about three years ago.

32. About six years ago, while Plaintiff was working as the manager of the Caseyville location, she was told that all of the Taco Bell restaurants were converting to a system in which employee fingerprints would be scanned and used to clock employees in and out.  As a manager, she also had to direct other employees to provide their fingerprints into a system that was integrated into the Taco Bell cash registers.

33. Consequently, each time that Plaintiff and any of the employees who she managed, clocked in or out, or took breaks, they were required to provide Defendant with a scan of their

7

fingerprints on a fingerprint scanner located on the facilities' cash registers. As a manager, Plaintiff was also required to provide her fingerprint when she dealt with any time records or certain other records pertaining to employees.

34. Then, upon information and belief, Defendant's fingerprint matching technology compared Plaintiff's scanned fingerprint against the fingerprint previously stored in Defendant's fingerprint database.

35. As employees, Defendant required Plaintiff to scan their fingerprint so that it could use them as an authentication method to track their time. Defendant subsequently stored Plaintiff's fingerprint data in its databases.

36. Defendant never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used their fingerprints. Similarly, Defendant never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete their fingerprints.

37. Plaintiff never signed a written release allowing Defendant to collect or store their fingerprints.

38. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of the BIPA alleged herein.

39. Plaintiff now seeks statutory damages under the BIPA as compensation for the injuries Defendant has caused as well as injunctive or other relief.

### CLASS ALLEGATIONS

#### Class Definition

40. Plaintiff brings this action pursuant to 735ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All citizens of the State of Illinois who, within the applicable statute of limitations, had their fingerprints collected, captured, received, otherwise obtained, or disclosed

8

by Defendant while residing in Illinois.

41. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

43. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

9

    d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

    e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

    f) whether Defendant complies with any such written policy (if one exists); and

    g) whether Defendant used Plaintiff's and the Class's fingerprints to identify them.

44. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

45. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase

the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**CAUSE OF ACTION**
**COUNT I**
**Violation of 740 ILCS 14/1,** *et seq.*

**(On Behalf of Plaintiff and the Class)**

46. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first:

   (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

   (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and*

   (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

48. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and--importantly--deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually

delete the biometric information. *See* 740 ILCS 14/15(a).

49. Defendant fails to comply with these BIPA mandates.

50. Defendant is a company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

51. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

52. Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

53. Defendant violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

54. Defendant violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers biometric information was being collected and stored.

55. Defendant violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored and used.

56. Defendant violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

57. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights

to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et. seq.*

58. On behalf of herself and the Class, Plaintiff seeks:

(A) Injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein;

(B) statutory damages of $1,000 per violation for each of Defendant's negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and

(C) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate the BIPA;

C. Awarding statutory damages of $1,000 for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20(1);

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Date: January 13, 2021                      */s/ Nicholas R. Lange*
                                                  Nicholas R. Lange
                                                  **CARLSON LYNCH LLP**
                                                  111 W. Washington Street - Suite 1240
                                                  Chicago, IL  60602
                                                  Phone: (312) 750-1265
                                                  Fax: (312) 212-5919
                                                  Email: nlange@carlsonlynch.com

                                                  Lynda J. Grant
                                                  **THE GRANT LAW FIRM, PLLC**
                                                  521 Fifth Avenue, 17th Floor
                                                  New York, NY 10175
                                                  Phone: (212) 292-4441
                                                  Fax: (212) 292-4442
                                                  lgrant@grantfirm.com

                                                  Gary S. Graifman
                                                  Melissa R. Emert
                                                  **KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
                                                  747 Chestnut Ridge Road
                                                  Chestnut Ridge, New York 10977
                                                  Phone: (845) 356-2570
                                                  Fax: (845) 356-4335
                                                  ggraifman@kgglaw.com
                                                  memert@kgglaw.com


                                                  ***ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS***